**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MILTON R. SEARCY,

                         Plaintiff,

       - v -                           Civ. Nos. 6:04-CV-912
                                           6:04-CV-913[1]
                                           (LEK/RFT)

COMMISSIONER OF SOCIAL SECURITY,
                          Defendant.

**APPEARANCES:**                           **OF COUNSEL:**

MILTON R. SEARCY
Plaintiff, *Pro Se*
105 Whittier Avenue
Rome, New York 13440

HON. GLENN T. SUDDABY                     WILLIAM H. PEASE
United States Attorney for the Northern District of New York   Assistant United States Attorney
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER[2]

In this action, *pro se* Plaintiff Milton Searcy moves, pursuant to 42 U.S.C. § 405(g), for review

of a decision by the Commissioner of Social Security denying his application for Disability Insurance

Benefits (DIB) and Supplemental Security Income (SSI) for the period of June 1976 through October

1985.[3] Based upon the following discussion, this Court recommends that the Commissioner's decision

---

[1] On November 22, 2004, civil cases 6:04-CV-912 and 6:04-CV-913 were consolidated, with civil case number 6:04-CV-912 designated as the lead case. Dkt. No. 15, Order, dated Nov. 22, 2004.

[2] The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d). This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 5, 7, 18-19, 22-23, 26-28, & 32-33 (Pl.'s Submissions); Dkt. No. 24 (Def.'s Br.).

[3] The Docket Report contains numerous submissions from Plaintiff purporting to be documents in support of his claim for relief. *See* Dkt. Nos. 5, 7, 18-19, 22-23, 26-28, & 32-33. The majority of Plaintiff's papers, however, consist not
(continued...)

denying Social Security benefits be **affirmed**.

## I.  BACKGROUND

### A.  Procedural History

Searcy has quite an elongated history with the Social Security Administration (SSA), spanning over thirty years during which time he has filed at least eight applications[4] for disability benefits. Though the task of reciting, and perhaps reading, this procedural history may be arduous, to truly appreciate the current appeal in its proper context, it is necessary to traverse the trail that has, for a third time, led Mr. Searcy to this Court's doorsteps.[5]  The claim for disability insurance at issue in this appeal relates to a lower-back injury Searcy allegedly sustained in 1964 while employed by Rome Cable Corporation.

Searcy's tenacious pursuit of disability benefits began on or around August 14, 1975, when he filed an application for a period of disability (POD) and DIB.  That application was denied on November 13, 1975, and Plaintiff did not pursue an appeal.  On February 6, 1978, Searcy filed a second

---

[3](...continued)
of legal arguments, but rather exhaustive and repetitive lists of citations to federal regulations, state laws, and state rules. Plaintiff's citations to these rules and regulations are, at best, confounding as he provides no discernible rationale for his nonsensical notations, nor can any be reasonably gleaned.  I addition to the seemingly never-ending lists of citations, Plaintiff's submissions include countless paragraphs of rambling, incoherent prose.  Suffice it to say, understanding Plaintiff's arguments and parceling through his tumultuous submissions have proved most difficult for this Court.

[4] Though not all of Searcy's applications are included in the Administrative Record, the Court takes judicial notice of the procedural history recited by the various administrative law judges' decisions that are a part of the Record.  Tr. at pp. 146-48 & 373-76; FED. R. EVID. 201 (noting that a court may take judicial notice of an adjudicative fact at any point in a proceeding whether requested or not).  A partial recitation of Searcy's prickly relationship with the SSA can also be found in *Searcy v. Comm'r of Soc. Security*, 103 F. Supp. 2d 120, 122-23 (N.D.N.Y. 2000).

[5] Though consolidated, the current appeals technically constitute Mr. Searcy's fifth and sixth civil actions in this Courthouse, all relating to SSA denials of benefits.  *See* 1) *Searcy v. HHS*, Civ. No. 6:94-CV-1143 (TJM/RWS); 2) *Searcy v. HHS*, Civ. No. 6:94-CV01144 (TJM/RWS); 3) *Searcy v. Comm'r of Soc. Security*, Civ. No. 6:99-CV-149 (Lead) (LEK/GLS); 4) *Searcy v. Comm'r of Soc. Security*, Civ. No. 6:99-CV-150 (Member) (LEK/GLS); 5) *Searcy v. Comm'r of Soc. Security*, Civ. No. 6:04-CV-912 (Lead) (LEK/RFT); 6) *Search v. Comm'r of Soc. Security*, Civ. No. 6:04-CV-913 (Member) (LEK/RFT).

application for POD and DIB, which was denied initially on April 4, 1978; no further appeal was taken. Instead, Searcy filed a third application for POD and DIB on July 17, 1980.  This application was denied as there was no new, material evidence submitted to warrant a change or reversal of the April 4, 1978 decision.  It was further noted that Searcy's insured status expired on September 30, 1976, and thus he was not eligible for DIB beyond that date.

On October 11, 1985, Searcy filed his fourth application for POD and DIB, alleging an inability to work since September 10, 1973.  In his request for a hearing, dated June 23, 1986, Searcy specifically requested that his case be re-examined under the *Dixon* court order.  Since the *Dixon* order has an appreciable affect on this case, the Court will digress from the historical/procedural recitation and explain what transpired in *Dixon*.

In *Dixon v. Heckler*, a district judge in the Southern District of New York certified a class action brought to challenge a policy of the Secretary of Health and Human Services wherein disability benefits were systematically denied at Step Two on the basis of non-severity.  589 F. Supp. 1494 (S.D.N.Y. 1984).  Class members consisted of claimants whose benefits were denied or terminated since July 20, 1983.  *Id*. at 1500.  Class members assailed the Secretary's "policy" of rendering Step Two denials without inquiring into the effect of vocational factors, such as a claimant's age, education, and work history.  *Id*. at 1501.  The district court held that the so-called "severity regulation" conflicts with the Social Security Act and is therefore invalid; the court then preliminarily enjoined the Secretary from denying or terminating benefits on the basis of that regulation.  *Id*. at 1510-12.  On appeal, the Second Circuit affirmed the preliminary injunctive relief awarded.  *Dixon v. Heckler*, 785 F.2d 1102 (2d Cir. 1986).  Thereafter, the Supreme Court overruled the Second Circuit based upon its decision in *Bowen v. Yuckert*, 482 U.S. 137 (1987), wherein the facial validity of the severity regulation was upheld, and

accordingly remanded the *Dixon* case for further consideration.  *Bowen v. Dixon*, 482 U.S. 922 (1987).

Upon remand, the Second Circuit vacated the preliminary injunction and remanded the matter to the

district court for further proceedings.  *Dixon v. Sec'y of Health and Human Servs.*, 827 F.2d 765 (2d

Cir. 1987).

     On remand, the district court determined that although the severity regulation was facially valid,

it was being applied in a manner inconsistent with the Social Security Act.  *Dixon v. Sullivan*, 792 F.

Supp. 942, 953-54 (S.D.N.Y. 1992).  Specifically, according to the court, not only did the Secretary

misapply the severity regulation, but there was also an improper practice of failing to consider the

combined effect of all impairments, even those deemed not severe.  *Id*. at 952-57.  The district court

stated that the pattern and practice of misapplying the severity regulation began in June 1976 and

continued until July 1983.  *Id*. at 957 & 960  Because many of the affected claimants would not have

cause to know of the Secretary's misapplication of this regulation, the court applied an equitable toll

of the statute of limitations for all class members in bringing an appeal to federal court, thereby

allowing class members to appeal denials even if they failed to bring suit within the sixty-day statutory

period or if they failed to exhaust administrative remedies.  *Id*. at 959-60.  Later, a remedial order was

issued implementing the 1992 Opinion and retroactively expanding the class of affected claimants to

include individuals whose benefits were denied or terminated <u>after</u> June 1, 1976.  *Dixon v. Shalala*, Civ.

No. 83-CV-7001, Dkt. No. 112 (S.D.N.Y. 1993).  The remedial order was upheld on appeal to the

Second Circuit.  *Dixon v. Shalala*, 54 F.3d 1019 (2d Cir. 1995).

     With that synopsis in tow, we return to Mr. Searcy's October 1985 application wherein, in June

1986, he sought to have his case re-examined under the *Dixon* order.  Notably, at the time of his

request, much of the *Dixon* litigation had yet to be consummated.  The SSA rejected Searcy's request

*-4-*

after determining that Plaintiff was not a member of the class certified in *Dixon* since, at that point in time,  it only encompassed individuals whose benefits were denied or terminated <u>after</u> July 20, 1983, whereas Searcy's denials occurred prior to that date.  Tr. at pp. 277-78.  Because no new, material evidence was presented, the October 1985 application was dismissed on May 29, 1987, pursuant to the principle of *res judicata*.  *Id*.  This determination was upheld by the Appeals Council on January 25, 1988.  *Id*. at pp. 299-300.

 Undeterred by this repudiation, Searcy filed a fifth application for POD and DIB on December 14, 1987.  The Administration promptly sent a letter, dated December 16, 1987, notifying Plaintiff that his application was a duplicate of his October 11, 1985 application and therefore, the decision on the October application remained in effect.  No further action was taken on this fifth application.

 Yet, Mr. Searcy's tenacity persevered as he filed a sixth application, dated July 19, 1988, for POD and DIB.  On August 2, 1988, he was again notified that the application was a duplicate of prior applications and was accordingly denied.  *Id*. at pp. 301-02.  On September 2, 1988, ALJ Volhard dismissed Plaintiff's request to review the *res judicata* decision, and, on April 10, 1989, reconsideration of the dismissal was denied.  On May 5, 1989, Plaintiff's request for a hearing on his sixth application was denied pursuant to 20 C.F.R. § 404.957(c)(1).[6]  *Id*. at pp. 304-06.

 With unparalleled dogged determination, Searcy filed a seventh application for POD and DIB

---

[6] Pursuant to the Regulations,

 [a]n administrative law judge may dismiss a request for a hearing under any of the following conditions:

  ****

  (c) The administrative law judge decides that there is cause to dismiss a hearing request entirely or to refuse to consider any one or more of the issues because –

   (1) The doctrine of *res judicata* applies in that [the Administration has] made a previous determination or decision under this subpart about [a claimant's] rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action.

20 C.F.R. § 404.957(c)(1).

on January 12, 1993. *Id*. at pp. 307-09. This application was again denied through the reconsideration level on the basis of *res judicata*. *Id*. at p. 314. Searcy's request for a hearing was denied in a written decision, dated November 16, 1993, pursuant to 20 C.F.R. § 404.957(c)(1), and, on July 1, 1994, the Appeals Council decided there was no basis to review the dismissal. *Id*. at pp. 326-29 & 331-32.

On September 8, 1994, Searcy appealed the Commissioner's 1994 determination by filing a civil action in this Court, the first of many federal appeals. *Searcy v. HHS*, Civ. No. 6:94-CV-1144 (TJM/RWS).[7]  On March 19, 1996, the Honorable Thomas J. McAvoy, then-Chief United States District Judge, dismissed Plaintiff's action. *Id*., Dkt. No. 23, Decision and Order, dated Mar. 19, 1996 (reprinted in Admin. Tr. at pp. 334-35). In his written decision, Judge McAvoy observed that despite the fact that Searcy's insured status expired nearly twenty years prior, he had filed seven applications based on the same claims. Judge McAvoy repeated the pragmatic pronouncement that Searcy "should not be permitted to waste scarce administrative and judicial resources by trying to take repeated, duplicitous bites at the apple. It is clearly time for repose." *Id*. at p. 2 (reprinted in Admin. Tr. at p. 335) (quoting the Honorable Ralph W. Smith, Retired United States Magistrate Judge, Report-Recommendation, Dkt. No. 18, at p. 4).

Despite the Judges' admonishments, in May 1996 Searcy requested that the SSA reopen a disability application he purportedly filed on November 22, 1976, which he alleged was never accepted by a claims representative in the SSA Rome Office. Searcy contended that the very same application was accepted by a claims representative on October 26, 1987, but was never adjudicated. *See* Tr. at

---

[7] Actually, Searcy filed two separate civil actions on that date. The pleading initiating the second civil action is entitled "Sharpe" Motion, presumably pursuant to *Sharpe v. Harris*, Civ. No. 79-CV-1977 (S.D.N.Y. Mar. 6, 1990); by this action, Searcy sought an order from the district court directing the SSA to render a decision and/or award interim benefits. The "Sharpe" Motion was denied and the case was closed on January 25, 1996. *Searcy v. HHS*, Civ. No. 6:94-CV-1143 (TJM/RWS). The request to review the SSA denial of benefits was addressed in a separate decision.

p. 348.  The request to reopen was initially refused (Tr. at pp. 348-49); however, on June 28, 1996, the

Administration reconsidered and processed the disability application with a receipt date of October 26,

1987 (Tr. at 351).   The application was denied initially and on reconsideration.  *Id*. at pp. 357-67.  On

November 21, 1997, the ALJ dismissed Plaintiff's request for a hearing stating that the claims in the

"unadjudicated" application were identical to the previous applications and thus *res judicata* applied.

*Id*. at pp. 371-76 (citing 20 C.F.R. § 404.957(c)(1)).  On November 27, 1998, the Appeals Council

denied Plaintiff's request for review.  *Id*. at p. 379.

Subsequently, on January 29, 1999, Plaintiff filed another civil action in this Court.  *Searcy v.*

*Comm'r of Soc. Security*, Civ. No. 6:99-CV-149 (Lead); 6:99-CV-150 (Member) (LEK/GLS).[8]   On

May 19, 1999, the SSA voluntarily moved for a remand of the action based upon the *Dixon* remedial

order (discussed above), which expanded the certified class of affected claimants to include those who

were denied benefits between June 1, 1976 and July 19, 1983–a time frame that the SSA believed

encompassed Searcy's denials.[9]   On March 28, 2000, the Honorable Lawrence E. Kahn, United States

District Judge, granted Defendant's motion and remanded the case back to the SSA pursuant to

Sentence Six of the Social Security Act.  Tr. at pp. 380-83.

---

[8] Again, Searcy filed two actions, one seeking review of the SSA denial of benefits and the other seeking, via a "Sharpe" Motion, an court mandate to the SSA to render a final determination.  This time around, the Court consolidated both actions.

[9] Here is where the Court is puzzled by an  unexplained anomaly in the Administrative Record.  Endeavoring to provide a panoptic recital of Searcy's thorny relationship with the SSA, the Court scoured the Administrative transcript and uncovered a SSA Notice of *Dixon* Court Review addressed to Searcy.  Tr. at p. 343.  In light of the specific reference in that document to "[a] recent court case called Dixon v. Shalala," and given the temporal proximity between this notice, dated August 18, 1995, and the Second Circuit sanction of the *Dixon* remedial order, decided on April 19, 1995, it is reasonable to conclude that this notice was sent to inform Searcy of his possible inclusion in the *Dixon* class and his right to have his claim reviewed.  It appears that Searcy completed the necessary reply form thereby confirming his intent to seek review of his denied claim, and it further appears that this form was received by the SSA on or about September 27, 1995, well within the ninety-days allotted by the SSA to seek such review.  *Id*. at p. 345.  Yet, the trail ostensibly ceases with this returned form and the Court has not been successful in ascertaining what became of this purported *Dixon* review and none of the historical recitations rendered by various judges contains any such reference.

-7-

Thereafter, on April 27, 2000, the Appeals Council remanded the case to an ALJ for proceedings pursuant to the remedial order of *Dixon v. Shalala*. *Id*. at pp. 391-92. A Hearing was held on September 19, 2000, before ALJ Franklin T. Russell (*Id*. at pp. 153-89), and on December 14, 2000, an unfavorable decision was rendered (*Id*. at pp. 512-19). On February 12, 2002, the Appeals Council vacated the decision and remanded the case for a new hearing and new decision. *Id*. at pp. 539-41. The basis for the remand was ALJ Russell's failure to properly develop the record in light of the fact that Searcy had provided names, but not addresses, of his physicians, yet the ALJ made no attempt to obtain evidence from those doctors. *Id*. at p. 540. It was further noted that since Searcy had been awarded benefits on a different application because of a mental impairment, on remand the file and medical evidence for that successful application should be made a part of this record and the ALJ should further attempt to obtain records from current treating physicians and psychiatrists. *Id*.

On June 7, 2002, and subsequently on July 12, 2002, a Hearing was held before ALJ John M. Lischak (*Id*. at pp. 190-272), and, on September 13, 2002, the ALJ issued an unfavorable decision against Searcy (*Id*. at pp. 146-52). On May 26, 2004, the Appeals Council concluded there was no basis under the Regulations to grant Plaintiff's request for review. *Id*. at pp. 137-39. With the Appeals Council's May 26th opinion, it appeared that ALJ Lischak's decision became the final decision of the Commissioner, and so Searcy filed his current civil action on July 30, 2004, thus constituting his third appearance in this federal courthouse. However, yet another anomaly occurred in this matter when, on August 10, 2004, the Appeals Council *sua sponte* set aside its May 26th determination noting the denial of review was a procedural error. *Id*. at p. 136. The Appeals Council informed Searcy that his original exceptions to the ALJ's decision appeared to be untimely as such were filed beyond the thirty-day limit and Searcy was directed to provide proof that he submitted timely exceptions; should he fail to submit

such evidence, the Administrative Record would be sent to the United States Attorney to be filed with the federal court. *Id*. at pp. 134-35. It is not clear what, if any, response was filed by Searcy as the Appeals Council's August 10, 2004 Notice is the most recent document contained within the Administrative Record.[10]

## B. Medical Record

Generally, Searcy alleges he was disabled from June 1976 through October 1985 due to pain in his left arm and lower back as well as respiratory, emotional, and dental problems. *See generally* Tr. at pp. 165-69, 242, & 401. In compliance with the Appeals Council's directive, the ALJ made a considerable effort to parcel through and organize the records submitted by Searcy, and further contacted the battalion of doctors Plaintiff claimed to have received treatment. Some physicians provided the requested records, others responded that such records had been destroyed, while others denied ever treating Plaintiff.[11] Given the paucity of medical records available, the facts in this case are relatively brief.

---

[10] Searcy's alleged failure to file timely exceptions is not fatal to his pursuit of federal court review. Though Searcy filed a new civil action, it is important to remember that the genesis of the current review is Judge Kahn's sentence six remand of Searcy's 1999 case. Under that type of remand, the federal court retains its jurisdiction over the matter. *See* 42 U.S.C. § 405(g) (noting that following a sentence six remand, the Secretary must, after taking further evidence and rendering a decision, return to the district court to "file with the court any such additional or modified findings of fact and decision, and . . . a transcript of the additional record and testimony"). Pursuant to the Regulations, if exceptions to the remanded ALJ decision are not filed, "the decision of the administrative law judge becomes the final decision of the Commissioner after remand." 20 C.F.R. § 404.984(d). Thus, this Court retained the jurisdiction to review Searcy's remanded determination.

[11] We provide the following examples as an illustration of the various medical records that could not be located. By letter, dated August 12, 1996, the SSA was informed that Searcy had been a patient of Dr Panasci, who had been deceased for over twelve years and whose records, if not already transferred, had been destroyed. Tr. at p. 453. The Administrative Record contains some treatment records/statements from E.H. Pansci, M.D., which bear Searcy's trademark citation notations, thus, we deduce such records were supplied by Searcy himself. *Id*. at pp. 462-64; *see also id*. at p. 130 (List of Exhibits, noting which Exhibits were submitted by Searcy). By notice, dated August 20, 1996, from Tallahassee Memorial Hospital the SSA was informed that Plaintiff had never been admitted to that hospital. *Id*. at p. 454. Rome Memorial Hospital, responding to a request for documents, issued two statements indicating that all records from 1964 to 1985 were destroyed as their retention policy was to keep files for only seven years. *Id*. at pp. 501 & 572. Nevertheless, Searcy provided a multitude of copies of records he retained regarding the treatment he received at Rome Hospital. *See id*. at pp. 465-76 & 478-95. Lastly, in response to the ALJ's inquiry, Ralph Tardugno, D.D.S., stated that he had no records that Plaintiff visited his office between October 1975 through October 1985. *Id*. at p. 571.

Plaintiff asserts that his problems began when he injured his back at his workplace in August 1964. *Id*. at p. 407. In relation to this alleged injury, E.H. Panasci, M.D., examined Plaintiff several times, beginning in 1969 through 1970, to determine whether he had sufficiently recovered to enable a return to work. *Id*. at pp. 462-64 & 628. On several occasions, Dr. Panasci determined that Plaintiff could indeed return to regular working conditions. *See id.*

With regard to Searcy's dental problems, in 1978, Donald Washburn, D.M.D., examined Plaintiff several times for a periodontal infection, but did not continue treatment beyond that year. *Id*. at pp. 561-63. Then, beginning in June 1980 and intermittently through 1989, Plaintiff had several dental visits with Frank Brogano, D.D.S., regarding receiving a partial and full upper replacements. *Id*. at pp. 415-21. On July 30, 1985, it was noted that Plaintiff had a periodontal abscess, for which he was given antibiotics and Tylenol. *Id*. at p. 418.

The only other pre-1985 medical records are from Ming-Jer Pan, M.D., and Louis H. Van Slyke, M.D. *Id*. at pp. 564-67 & 569-570. Dr. Pan treated Plaintiff from September 19, 1980 until November 29, 1985, for sexually transmitted diseases and an upper respiratory infection. *Id*. at pp. 564-67 & 569.[12] On or about November 14, 1985, Dr. Pan indicated that Plaintiff did not have a disabling condition. *Id.* In the interim, on September 9, 1985, Dr. Van Slyke examined Plaintiff for sinus issues and indicated that the findings were compatible with sinusitis, Searcy's heart and lungs were normal and clear, and the Searcy's chest was "normal." *Id*. at p. 570.

Post-1985 medical records were also included and reviewed by the ALJ. *See id*. at pp. 422-24, 426, 428, 430, 432-33, 435-36, 438-53, 465-76, 485, 488, 492, 496, 653, & 656. Notably, records from 1991, 1993, 1995, and 1996 revealed that Plaintiff had a normal lumbosacral spine in that there were

---

[12] The copies of Dr. Pan's Progress Notes are, for the most part, indecipherable. *See* Tr. at pp. 566-67.

no abnormalities of the vertebral bodies or intervertebral disc spaces and the posterior elements, sacroiliac joints, and sacrum appeared normal. *Id*. at pp. 433, 446, 450, & 467. In December 1996, it was reported that the bones and soft tissue were normal in Plaintiff's left shoulder. *Id*. at p. 476. Subsequently, in 2000 and 2002, Plaintiff was observed to have a normal gait, his motor strength was 5/5, he had negative straight leg raises, and his reflexes were intact. *Id*. at pp. 492, 496, & 661. Records from June 2000 and March 2001 noted Plaintiff's possible alcohol abuse as well as Plaintiff's admission that, at one point, he had consumed a bottle of whiskey per day to control his pain. *Id*. at p. 496.

Aside from the medical records, Plaintiff's testimony from his Hearings in June and July 2002 with ALJ Lischak provided no further insight into any of his ailments nor their effects on his ability to do basic work activities. *See id*. at pp. 192-272. Instead of discussing his ailments, Plaintiff argued with the ALJ about how the Rome SSA Office did not fulfill its duties and how ALJ Lischak was denying him his rights. *Id.* It is only from a previous Hearing, held on September 19, 2000, that this Court can garner any information regarding Plaintiff's claimed ailments.[13] *See generally id*. at pp. 153-89. Plaintiff testified that he had lower back and leg pain, but that it did not last all day. *Id*. at pp. 166-67. He further testified that he would not do any strenuous activity knowing the pain would come at any time and that he would get some medication from the doctors if he felt any pain. *Id*. at p. 167. Searcy also stated that he would occasionally get pain in his left arm and would take medication for it. *Id*. at p. 168. Plaintiff then testified that during the relevant time period of this case, he had problems with his teeth and would take codeine based drugs. *Id.* Plaintiff indicated that if the doctors would not

---

[13] Plaintiff also argued with ALJ Russell at the September 2000 Hearing, however, the ALJ was able to extract some information from Plaintiff before he began making statements that were not relevant to the proceeding. *See generally* Tr. at pp. 155-89.

prescribe the drugs, he would buy pain pills "out on the street[.]"  *Id.*  Plaintiff further complained that he had breathing problems but that the condition was stabilized by doctors.  *Id.* at pp. 169-71.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied.  *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g).  Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed.  *Johnson v. Bowen*, 817 F.2d at 986.

### B.  Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A).  Furthermore, the claimant's physical or mental impairments must be of such severity

as to prevent engagement in any kind of substantial gainful work which exists in the national economy.

*Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis

set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920.  At Step

One, the Commissioner "considers whether the claimant is currently engaged in gainful activity."

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).  If the claimant is engaged in substantial gainful

activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b).  If the

claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and

assesses whether the claimant suffers from a severe impairment that significantly limits his or her

physical or mental ability to do basic work activities.  *Id.* at §§ 404.1520(c) & 416.920(c).  If the

claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such

impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the

Regulations.  *Id*. at §§ 404.1520(d) & 416.920(d).  The Commissioner makes this assessment without

considering vocational factors such as age, education, and work experience.  *Berry v. Schweiker*, 675

F.2d at 467.  Where the claimant has such an impairment the inquiry ceases as he or she is presumed

to be disabled and unable to perform substantial gainful activity.  *Id*.  If the claimant's impairment(s)

does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers

whether the claimant has the residual functional capacity (RFC)[14] to perform his or her past relevant

---

[14] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting.  Your residual functional capacity is what you can still do despite your limitations."  20 C.F.R. §§ 404.1545(a) & 416.945(a).

work despite the existence of severe impairments.  20 C.F.R. §§ 404.1520(e) & 416.920(e).  If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy.  *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four).  *Berry v. Schweiker*, 675 F.2d at 467.  If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy.  *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990).  In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills.  20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C.  ALJ Lischak's Findings

In his written decision, the ALJ stated that Searcy last met the disability insured status requirements on September 30, 1976.  Tr. at p. 151.  Using the five-step disability evaluation, ALJ Lischak found that 1) Searcy had not engaged in any substantial gainful activity between June 1, 1976 and October 1985; and 2) he did not have any severe medically determinable impairment; thus, Plaintiff was not disabled during the relevant time period of June 1, 1976 through October 1985.  *Id.* at pp. 151-52.  After reviewing the administrative transcript, the Court finds that the ALJ applied the correct legal standards and his findings are supported by substantial evidence of record.

*-14-*

### D.  Searcy's Contentions

As noted previously, the Court experienced much difficulty discerning Plaintiff's convoluted references to a plethora of federal statutes and other irrelevant issues.  *See* Dkt. No. 18, Pl.'s Br. at p. 2; *see also supra* note 3.  Because of his *pro se* status, we have reviewed the entire administrative transcript and liberally read Plaintiff's submissions in an attempt to address the strongest arguments suggested therein.  Since the disability evaluation ceased at Step Two with the ALJ's finding of no severe impairments, we commence our analysis of whether the ALJ's determination at Step Two is supported by substantial evidence and whether the correct legal principles were applied.

### 1.  Step Two-Severity of Impairment

At Step Two, the ALJ must determine whether an individual has an impairment or combination of impairments that are severe.  20 C.F.R. § 404.1520 & 416.920.  The Second Circuit has warned that the Step Two analysis may not do more than "screen out *de minimis* claims."  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (quoted in *de Roman v. Barnhart*, 2003 WL 21511160, at *11 (S.D.N.Y. July 2, 2003)).  An impairment is severe at Step Two if it significantly limits a claimant's ability to do basic work activities.  20 C.F.R. §§ 404.1521(a) & 416.921(a).  The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include,

(1) Physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b) & 416.921(b); *see also* Social Security Ruling 85-28, 1985 WL 56856, at *3-4, *Titles II and XVI: Medical Impairments That Are Not Severe* (S.S.A. 1985).

If multiple impairments are alleged, the combined effect of all impairments should be

considered "without regard as to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §§ 404.1523 & 416.923; 42 U.S.C. § 423(d)(2)(B); *see also Schulte v. Apfel*, 2000 WL 362025 (W.D.N.Y. Mar. 31, 2000). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling 85-28, 1985 WL 56856, at *3, *Titles II and XVI: Medical Impairments That Are Not Severe* (S.S.A. 1985)).

Here, the ALJ stated that "[a] prudent review of the record contains no significant medical evidence from the period June 1, 1976 to October 1985." Tr. at p. 150. While the ALJ acknowledged the presence of a few dental records, some medical bills, as well as current medical evidence, the ALJ stated there was no diagnostic and/or clinical evidence presented that established or lent credence to Plaintiff's allegations of disability. *Id.* As such, the ALJ determined there was no medically determinable severe impairment for that period. *Id*. at pp. 150-51.

Based on the paucity of evidence, the ALJ's assessment of non-severity is not subject to attack. Plaintiff claimed that a number of ailments rendered him disabled, including lower back and left arm pain as well as respiratory, emotional, and dental problems. *See id*. at pp. 165-69, 242, & 401. Although the record documents a lower back injury stemming from a work-related accident in 1964, there are no subsequent medical records from 1976 through 1985 that reveal any problems associated with Plaintiff's back. *Id*. at p. 407. Moreover, records obtained from 1991 until 2000 demonstrate that Searcy had a normal lumbosacral spine, straight leg raises were negative, gait was normal, and reflexes were intact. *Id*. at pp. 433, 446, 450, 467, 492, 496, & 661. Furthermore, a few years after Plaintiff sustained the back injury, Dr. Panasci found that he could return to a regular working environment.

*Id*. at 462-64 & 628.  Even Dr. Pan, who treated Plaintiff for venereal diseases and an upper respiratory infection, stated he did not believe Plaintiff had a disabling condition.  *Id*. at p. 569.  And, apart from this one-time treatment for a respiratory issue, no other medical records from 1976 through 1985 describe any reoccurring respiratory problems.  As for Plaintiff's dental issues, while he was treated for an abscess and was to receive partial and full upper replacements, neither Dr. Brogano nor Dr. Washburn opined that this would affect Plaintiff's ability to do basic work activities.[15]  *See* Tr. at 415-21 & 561-63.

In regards to Plaintiff's alleged left arm pain and emotional problems, once again, there are no medical records in the relevant time period that show Plaintiff either complained of, suffered from, or was treated for either of these two issues.  Even probing into current medical records does not aide Plaintiff.  There are no current records concerning Plaintiff's mental health issues and Plaintiff's left arm pain does not seem to be an issue.  In December 1996, an examination of Plaintiff's left shoulder revealed that his bones appeared normal with no evidence of fracture, dislocation, or any other abnormality and his soft tissue was normal.  Tr. at 476.  Neither of these alleged impairments seem to hinder Plaintiff's ability to do basic work activities.

Thus, taking into account the entire medical record (composed of current records as well as those from 1976 through 1985), we find that the ALJ applied the correct legal standard and his decision that Plaintiff did not have any severe impairments was supported by substantial evidence.

## 2.  Plaintiff's Credibility

In addition to the severity assessment, ALJ Lischak determined that Searcy's allegations

---

[15] According to the medical record, Searcy never received the partial and full upper replacement.  Tr. at p. 420. No explanation was offered, but a written notation is on the dental record explaining that Searcy was last seen on January 4, 1989, and that Searcy was "always difficult to work on [and] missed a lot" of appointments.  *Id*.

regarding the severity of his symptoms were not credible.  Because Plaintiff was argumentative and far from forthcoming during the Hearing in 2002, ALJ Lischak utilized part of the testimony obtained in the September 2000 Hearing along with the available medical evidence in rendering his credibility assessment.  *See* Tr. at 150-51 & 192-272.

Under 20 C.F.R. §§ 404.1529(a) & 416.929(a), subjective pain will be considered in determining a claim for disability to the extent in which "symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."  Symptoms such as pain are to be considered by the ALJ at all steps of the disability determination.  20 C.F.R. §§ 404.1529(a) & (d) & 416.929 (a) & (d).  A claimant's statements about the persistence, intensity, and limiting effects of these symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings.  *Id*. at § 404.1529(c) & 416.929(c).

Once medically objective evidence is submitted, the ALJ must identify the severity of the pain and whether that pain will limit the claimant's ability to work.  *Id.*  "It is well settled that 'a claimant's subjective evidence of pain is entitled to great weight' where . . . it is supported by objective medical evidence."  *Simmons v. United States R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir. 1992) (quoting *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983)).  However, in a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged."  *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987).  Where the ALJ resolves to reject subjective testimony with regards to pain and other symptoms, he or she "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his [or her] determination is supported by substantial evidence."  *Id*. at 608

(citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1985)).

In evaluating a claimant's complaints of pain, an ALJ must consider several factors set forth in the

Regulations including:

(i)     [The claimant's] daily activities;
(ii)    The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
(v)     Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
(vi)    Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3).

In the 2000 Hearing, Plaintiff testified that he had quite a bit of lower back and left arm pain;

to prevent the onset of this pain, Searcy would refrain from doing any strenuous activity and take

medication. Tr. at pp. 166-68. He further stated that he would take prescription medication for the pain

in his teeth and, if the doctors would not provide him with such, he would buy it on the street. *Id*. at

p. 168. Plaintiff also testified that he had respiratory problems but that the condition was stabilized by

doctors. *Id*. at pp. 169-71. Due to all these problems, Plaintiff stated he was completely unable to

work. *See generally id*. at pp. 162-72. Referencing this testimony, the ALJ found that despite the

current evidence and the attempt to obtain medical evidence for the relevant time period, a review of

the record showed a "genuine lack of objective medical evidence" that would establish the alleged

severity of impairments as claimed by Plaintiff. *Id*. at pp. 150-51.

The ALJ's assessment of Plaintiff's credibility is corroborated and substantiated by objective

medical evidence in the record. As previously stated, the medical evidence from 1976 through 1985

was minimal at best and did not support Plaintiff's assertions of debilitating impairments.  Medical evidence established that Plaintiff's lumbosacral spine as well as gait was normal, straight leg raises were negative, and reflexes were intact.  *Id.* at pp. 433, 446, 450, 467, 492, 496, & 661.  Furthermore, there was no documentation to confirm that there was any problem with his left arm or that Plaintiff was mentally impaired.  *Id.* at 476.  Additionally, there is nothing in the record to demonstrate that several visits to the dentist and one treatment for a respiratory infection inhibited his ability to work. *Id.* at pp. 415-21 & 561-63.  Thus, based on the evidence, the ALJ applied the correct legal standard and his decision that Plaintiff was not credible was supported by substantial evidence.

### III.  CONCLUSION

In light of the foregoing discussion, it is clear that in finding Searcy was not disabled, the ALJ applied the correct legal standards and his factual findings are supported by substantial evidence.  Thus, this Court recommends that decision be upheld.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further;

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72, 6(a), & 6(e).

Date:   July 16, 2008
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge